24925. TIPTON *v.* THE STATE.

Decided November 1, 1935.

*Vance Custer*, for plaintiff in error.

*M. E. O'Neal, solicitor*, contra.

MacIntyre, J. Having been convicted of possessing intoxicating liquor, Charlie B. Tipton filed his motion for new trial containing the general and certain special grounds.

R. A. Stephens, a deputy sheriff of Decatur County, testified in part as follows: "On the 19th day of November, 1934, I searched the premises of Charlie B. Tipton for intoxicants. . . A short time before the 19th, Saturday the 17th, Mr. Cook, Mr. Pollock, and I searched the place also. . . I went to the front door, and Mr. Pollock went to the back door. . . The front screen was fastened, had two or three hooks on it, and the wooden door was open. I could see through to the kitchen, and when I knocked on the door Charlie jumped and ran in the kitchen. I could see that in the kitchen he began to break glass and things, and in a

few minutes they come and let me in, and Charlie had his trousers wet all at the bottom along his legs in front, and I could smell whisky, and the glasses were broken and thrown in a slop bucket. We got those out, one or two, and a bottle, and found two or three jugs had had whisky in them, and some bottles. . . The day I was there, Saturday, I saw Charlie B. Tipton and the young lady I spoke about [Ethel Widenor]. On Charlie's breeches legs he had the odor of whisky. . . The spots were from along his belt in front on down his trousers. That was after I heard them breaking glass. . . On . . Saturday when I went down there, Charles B. and Ethel Widenor were in the kitchen where the glass was being broken. . . There were spots on his trousers, two I believe. In my opinion, it was whisky on his clothes that caused the odor of whisky." The testimony of the two officers who accompanied deputy sheriff Stephens on the occasion referred to by him is so similar to his that we deem it unnecessary to state it.

J. M. Floyd, sworn for the defendant, testified that he owned the Dixie Boarding-House, and that he rented it to Ethel Widenor in 1934. There was also testimony, that, in a room in a house which was only a few feet from the Dixie Boarding-House, whisky was found two days after the transaction above mentioned; that there was a path from the defendant's back door to that room, to which the defendant and several others had keys; that the defendant and Ethel Widenor were on rather intimate terms, and that on one occasion he was seen in her room on her bed. The substance of the defendant's statement is that he never sold or controlled any whisky.

There was other evidence; but the strength of the State's case rests upon the testimony of R. A. Stephens and like evidence given by other officers. We are of the opinion that the evidence supported the verdict, and that the court did not err in overruling either the general grounds or the first special ground, which is merely an elaboration of the general grounds. The second special ground avers that the court erred in charging the jury as follows: "Where certain premises are in joint possession and control of the defendant on trial and another person or persons, and such other person or persons have as much control, access to, and authority over the premises as the defendant, and forbidden beverages are found on such premises, the State must connect the defendant

. . with such beverage in such manner as to convince the jury beyond a reasonable doubt that the defendant . . was either the owner of such beverage in whole or in part, or that he had custody, possession, or control of the same in whole or in part. In other words, for the defendant under such circumstances to be convicted, the State must show some connection with the defendant and the beverage." Movant insists that the instruction, "the State must show some connection with the defendant and the beverage," was "misleading, incorrect, inappropriate, and tended to confuse the jury," in that "any connection is not sufficient, but . . the connection forbidden by law and charged in this accusation is the custody, possession, and control of whisky." Construing the portion of the excerpt complained of in connection with the preceding sentence, it is not subject to the assignment of error.

Complaint is made in the last special ground that the court erred in charging the jury as follows: "Or, if you believe beyond a reasonable doubt that some one else had the beverage there, and the defendant . . was aiding and abetting the owner, the others who had the beverage, and you believe it beyond a reasonable doubt, in that instance he would be just as guilty as the person who really owned the forbidden beverage and who really had control, custody, and possession of the same." Error is assigned, because (a) "there was no evidence . . as to who had control, custody, and possession of the whisky in question, and that the charge was unauthorized by the evidence;" (b) "this instruction was misleading and confusing to the jury, in that it authorized a conviction if the jury came to the conclusion that movant was aiding and abetting the owner or possessor of the whisky in any way; and the law requires that the accused shall aid and abet in the commission of the unlawful act, in order to authorize a conviction upon the charge of which he stands accused." These assignments of error disclose no cause for reversing the judgment. This ground is without merit.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*